KREIMELMANN, Respondent, v. JOURDAN, Receiver of the PEOPLE'S RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 26, 1904.

1. CARRIERS OF PASSENGERS: Street Railways: Use of Footboards: Contributory Negligence.  The defendant, a street railway company, operated open summer cars with footboards running the full length of the cars on each side, upon parallel tracks so close together that a passenger could not stand on an inside footboard without danger of collision with cars going in the opposite direction.  Plaintiff boarded a car and, while passing along the inside footboard, there being no rope or guard to prevent him using it, for the purpose of reaching a seat, was struck by a car on the other track and injured.  *Held,* in an action to recover damages for such injuries, whether plaintiff was guilty of contributory negligence because he lived in the neighborhood, frequently used the line and was familiar with the operation of the cars, where he testified that he did not know there was danger in getting on the footboard, was a question for the jury.

2. ———: ———: ———: Negligence.  Whether the defendant was guilty of negligence in operating the cars in that manner without means to restrain passengers from using the inside footboard, was a question for the jury.

3. ———: ———: ———: Looking and Listening.  In such case, it was not necessary for the plaintiff to look and listen for an approaching car before passing along a footboard; if he was exercising ordinary care to insure his own safety.

4. ———: ———: ———: Instruction.  And an instruction, that the footboard was only intended to be used in boarding the car and when alighting, was properly refused.

5. ———: ———: ———: **Contributory Negligence: Instruction.** Nor was it error to refuse an instruction that if plaintiff could have obtained a seat on the opposite side of the car where he first boarded it, but nevertheless went around on the inside, he thereby assumed the risk and should not recover, where it was not shown that he knew, or was careless in not noticing, there was a vacant seat on the outside. The instruction confuses the distinct defenses of assumption of risk and contributory negligence.

6. ———: ———: ———: ———. It can not be inferred as a matter of law that a passenger, who uses a footboard to get a seat he wants, although another seat was accessible without going on the footboard, is guilty of negligence or assumes the risk.

Appeal from St. Louis Circuit Court.—*Hon. J. W. Mc-Elhinney*, Judge.

AFFIRMED.

*Sears Lehmann, George W. Easley* and *Boyle, Priest & Lehmann* for appellant.

*A. R. Taylor* for respondent.

GOODE, J,—Plaintiff received very serious injuries, including the loss of a foot, by being struck by one of the trolley cars of The People's Railway Company, then operated by the predecessor of the present receiver. Plaintiff had taken passage at the southeast corner of Ohio street and Lafayette avenue on an open summer car with a continuous step or footboard along each side. He got on the car on the south side, intending to go eastward on Lafayette, as the railway track runs east and west on that avenue from the corner mentioned. Plaintiff was accompanied by his brother and, as they saw no vacant seat on the south side of the car where they entered, they passed around the rear bench to the north side to reach an unoccupied seat. The brother, Charles Kreimelmann, who was in advance, stepped on the north footboard and then to a seat with-

out harm; but the plaintiff had barely reached the board when he was hit by a car west-bound on the north track. The two tracks were near each other at that place; so near that the upright stanchions or grabrails, which projected from the sides of the two cars, were only ten or twelve inches apart as the cars passed, thus making it very hazardous for a passenger to be on an inside footboard. The plaintiff admitted he knew the tracks were close together, but swore he did not know there was danger of a car on the north track colliding with him as he endeavored to get a seat by stepping on the north footboard of the car he was on.

The defendant's position is that the plaintiff should have been denied relief by the trial court, because his own testimony permits no belief or inference except that he voluntarily and knowingly went into a place of danger. This position is founded on plaintiff's statement that he lived in the neighborhood and frequently used the railway line on which he was hurt. As to the plaintiff's testimony conceding, or conclusively establishing, that he knew there was danger of being struck by a passing car if he got on the footboard, we answer that it does neither; for, as said above, he positively denied knowing there was any danger and declared he did not think there was any. How then can it be said he should have been nonsuited on his own testimony? Manifestly he should not have been on the score that he voluntarily and recklessly assumed an obvious risk; for while his statement that he was ignorant of the risk; did not conclude the matter, it made an issue of fact for the jury to determine from all the evidence. That he was familiar with the tracks was to be taken into account in determining whether his declared ignorance of the danger incurred in getting on the footboard, was true. But a man might use street cars running on parallel tracks a long time, and might know the tracks were about the distance apart those in question were, without realizing that it was dangerous to use the running-

board of an open car if that side was left open for use, unless his attention was drawn to the danger by some incident. Men are not apt to make nice calculations about such things, but are rather inclined to trust to the carrier's system and management. The questions of the defendant's negligence and of the plaintiff's contributory negligence were for the jury and not for the court, if it is not the law that a passenger who steps on a footboard, as the plaintiff did and for the like purpose, is absolutely barred from recovering for an injury received while there. The operation of cars of the pattern which caused this accident, with no restraint or guard against the use of the footboards on both sides, and on tracks so close that passengers are in peril of a collision when using the inside footboard, can not be regarded as other than inconsiderate management. If it desired to operate such cars on such tracks, the company should have taken some precaution to prevent passengers from using the inside footboard; and leaving that side as accessible as the other, was an invitation to step on the footboard when it was necessary to do so in boarding or alighting from a car, or to find a seat. Situations in which it would be a negligent act for a passenger to get on the step or footboard of a moving car can be called to mind; but the facts disclosed in the present case are far from rendering it certain that the plaintiff was negligent. According to his testimony, and there is very little, if any, evidence to refute it, he was in no sense negligent when he stepped where he was hurt; for he stepped there in an endeavor to reach a seat and was moving cautiously. That such an act is not always a negligent one has been frequently held; and, by the principle of the decision in Hueselkamp v. Railway Co., 34 Mo. 45, Id., 37 Mo. 537, may be said to have been held in this state. In that case the plaintiff's husband got on a car at the fair grounds, in the city of St. Louis, to ride home. The car was crowded and he was compelled to stand on a step and hold by

the guard rails, with his body leaning outside the line of the car. In consequence of his position he was struck by another car standing on a turn-out, and killed. While the judgment was reversed on the first appeal for an erroneous instruction, there was no suggestion that the case ought to have been withdrawn from the jury; and, in truth, it was remanded for retrial. That an accident of the kind that befall Kreimelmann presents a case for the jury on the question of contributory negligence of the party injured, was decided in City R. R. Co. v. Lee, 50 N. J. L. 435; Chicago Ry. Co. v. Rood, 62 Ill. App. 550; Citizens Railway v. Hoffbauer, 23 Ind. App. 614; Cogswell v. Ry. Co., 5 Washington 46; Topeka Ry. v. Higgs, 38 Kas. 375; Elliott v. Ry., 18 R. I. 707. Text-writers declare the rule the same way. Nellis, Street Railways, p. 472.

The instructions given by the trial court advised the jury they must find Kreimelmann was observing ordinary care when hurt. In reference to the negligence of the railway company, the case was referred to the jury only on the issue of whether the tracks and the cars in use were so constructed that a passenger was likely to be struck by a passing car while going carefully along an inside footboard to a seat. The instruction granted at plaintiff's request was that, if, while he was getting to a seat on the footboard, he was struck and injured because the defendant's tracks and cars were so constructed as to leave insufficient space between the cars, he was entitled to recover, provided he was exercising ordinary care at the time. For the defendant the court advised the jury that the railway company was not bound to construct its tracks so as to make it impossible for persons riding on cars to be injured as plaintiff was, but only to construct them so that passengers using prudence and care would not be injured. As an abstract statement of the law that was correct (Craighead v. Railway, 123 N. Y. 395); but the court went further and applied the law to the proof by telling the

jury that if they found there was sufficient space between the tracks and the cars to enable a passenger to stand in safety on a footboard and to avoid collision with a passing car by using reasonable caution, the servants of the company had the right to assume a passenger would exercise such care; and that it was not negligent, under those conditions, for cars to pass each other when a passenger was on an inside footboard. The jury were further instructed that if the plaintiff knew of the close proximity of the tracks and that cars were passing, it was his duty, when he went on the footboard in search of a seat, to prevent his body from swinging out from the car, and if he could have passed to a seat without being hurt by using ordinary care, the verdict should be for the defendant. Those charges were sound and informed the jury what the law of the case was.

The proposition is greatly insisted on that the court erred in refusing to instruct that the plaintiff could not recover if he stepped on the footboard without first looking for a car on the north track. The rule that a person must look or listen before going on a given spot, or forfeit any relief for an injury received thereon, prevails when the spot is known to be in the track or course habitually passed over by trains, cars, wagons, and other instrumentalities whose impact will inflict injury. We are not sure a jury may be told a plaintiff can not recover for a personal injury if he did not look around before going where he was hurt, except when the accident occurred while the plaintiff was crossing a railway track, which is a warning of danger to a person about to cross it. When a man steps on a railway track he knows he is going where danger lurks, and knows, too, whence danger is to be apprehended; that is, from the approach along the track of an engine or car. Hence the propriety and the wisdom of requiring him to look in advance to see if the track is clear; of requiring that specific act as a discharge of

the duty to use ordinary care. A person crossing a railway track at a common highway crossing has no reason to rely on the railway company's having arranged the operation of trains to insure his safety, and hence must look for trains. But under circumstances which give him the right to trust to the railway company's care, the rule in regard to looking for trains before crossing a track does not prevail. Terry v. Jewett, 78 N. Y. 338; Warren v. Ry., 8 Allen 226; Klein v. Jewitt, 26 N. J. Eq. 474, 27 Id. 550. The footboard on which the plaintiff stepped was intended, among other things, for passengers to walk to a seat on. In itself it gave no warning that a person using it was likely to be hit by a car on the near track, but tended to produce an impression that he would be safe on the board; for it was not to be supposed the defendant would invite its patrons to expose themselves to great peril. Nor was the north track a warning to him; for he might believe with reason, that a passing car would miss him; and if he told the truth, that was his belief. We do not feel justified in prescribing as the measure or quantum of care to be used by a passenger in such a situation, that he must look for approaching cars before stepping on a footboard. The more satisfactory test of right conduct under the circumstances that surrounded the plaintiff is the one which prevails universally; namely, did he exercise ordinary care to insure his own safety? The facts did not call for a charge to the jury that plaintiff was bound to look for another car before he stepped on the board, though failure to take that precaution would defeat his action if the jury thought it was an essential element of due care.

We have been cited to certain precedents in which parties who had been hurt by a collision while riding on a footboard, were denied relief. We have examined those cases and find most of them are unlike the one before us in that the injured individuals got on the boards when they knew a conveniently accessible seat

awaited them where they stood. Moody v. Railroad, 13 Am. Neg. Rep. 111; Vroman v. Railroad, 27 N. Y. Supp. 257; Littman v. Railroad, 25 N. Y. Supp. 1002; Schoenfeld v. Railroad, 74 Wis. 433. In the case last cited the plaintiff took a position of peril against the protest and warning of the conductor. In the Moody case the plaintiff went on a footboard to get a seat beside some friends when there was a vacant seat near him that he could have reached from the inside of the car. The decision was put on the ground that the car was in motion when he moved and that there were plenty of seats near him. In the Littmann case the plaintiff was struck by a truck near the car which he saw before he got on the board, but the driver of the car did not see; and neither the driver nor the conductor knew Littman had taken passage. The ruling was that he should have avoided the truck by holding his body closer to the car, as it seems from the opinion, he might have done. The Vroman case is more like this one; but there was a vigorous dissent from the decision, and as it is in conflict with the other decisions we have cited, we can not be controlled by it.

We think the trial court did right in refusing to instruct that the footboard was only intended to be used in boarding the car and when alighting. To have so instructed would have been treating a question of fact as one of law; and, besides, it is open to observation that passengers are permitted to continually move along the footboards of cars to vacant seats.

Neither do we approve an instruction requested by the defendant of this purport; if the plaintiff could have obtained a seat on the south side of the car, but nevertheless went on the board on the north side, and thereby contributed to the accident, he assumed the risk and should not have a verdict. That charge blended in a confusing manner, the distinct defenses of assumption of risk and contributory negligence. It was founded on the statement of the motorman of the car plaintiff

was on that there were vacant seats on the south side of it. To convict the plaintiff of negligence in not taking a seat on the south side of the car, it would have to be found that he knew, or was careless in not noticing, there was a vacant seat on that side. A passenger might get on a crowded car at one end and fail to observe an empty seat on the side he was on at the other end without necessarily being careless. The refused instruction bound the plaintiff to take a seat on the south side, regardless of his knowledge or duty to know that he could get one. The plaintiff said there was no seat on that side, and that he and his brother crossed the car for that reason. Besides the absolute form of the instruction, we hold it is not the law that a passenger who uses a footboard to get a seat he wants, is guilty of negligence or assumes the risk as a matter of law. We are sustained in this ruling by all the authorities we have seen except the Pennsylvania decisions. In that State electric cars are likened to steam railway trains because of the great speed at which both are operated and the rule that it is negligence to ride on the platform of a car in a railway train when a seat can be obtained inside, is applied to passengers on electric cars. This ruling ignores the facts known to every one that the platforms and steps of electric cars are constantly used by street railway companies in transporting passengers while the platforms of coaches in trains are not. We cite the following decisions on the proposition that negligence is not legally inferred from riding on a platform or footboard of a street car when a seat can be obtained. Watson v. Railway, 91 Maine 584; Pray v. Railway, 44 Neb. 167; Hawkins v. Railway, 3 Wash. 592; Muldoon v. Railway, 7 Id. 528; Burns v. Railway, 50 Mo. 139 (horse car accident). Much less does the inference of negligence legally follow if a passenger uses a footboard briefly to reseat himself. Dixon v. Railway, 100 N. Y. 171; Coleman v. Railway, 41 Hun 380.

The Supreme Court of the United States has said:

"Occupations, however important, which can not be conducted without necessary danger to life, body or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguard. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence." Mather v. Rillson, 156 U. S. 391.

It was easy to prevent passengers from going on the inside footboard by stretching a wire or a rope. The boards will be used under the conditions that existed in the present instance, and are expected to be used; and, as we have said above, general knowledge of the location of parallel tracks does not conclusively import knowledge that a man will be swept off the footboard of a car on one track by a car passing on the other. To say, therefore, that if a person had knowledge of the proximity of the tracks, he used a footboard at his peril, would come near to authorizing a railway company to operate its system in a manner highly dangerous to the public, without responsibility for injuries. The street car company had no right to provide the footboard for the plaintiff's use and then make it dangerous for him to use it. The whole question was for the jury as to whether plaintiff exercised ordinary care or failed to do so and thereby contributed to his injury. This was ruled in Huelsenkamp v. Railway, 37 Mo. 536, and in Burns v. Railway, 50 Mo. 139, cases very like this one. If the plaintiff knew, or by ordinary care could have known the danger he was incurring in going on the footboard, and it was one that a man of prudence would not incur, the defendant was entitled to a ver-

dict. There was very slight evidence in this case to excuse the railway company from responsibility for the plaintiff's injury on the ground that he was to blame. He did a perfectly natural thing, when, without thought of a collision, he stepped to the board to reach a seat, there being no empty seat near him, as he swore. All the facts lead to the conclusion that the accident was due to the carelessness of the company in operating on parallel tracks cars so constructed that a passenger could use the inside footboard, but not so constructed that it could be used safely.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.