# MRS. HENRY C. GAGE, Appellant, v. ST. LOUIS TRANSIT COMPANY.

### Division One, April 1, 1908.

1. **NEGLIGENCE: Passenger on Street Car: Leaning Over Railing.** It is not negligence, as a matter of law, for a passenger on a street car to protrude a portion of his body out of the car in which he is being carried, but such question is one of fact to be determined by the jury, under proper instructions, the test being whether or not an ordinarily prudent person would do the same act under the same or like circumstances.

2. ———: ———: ———: **Sickness.** Plaintiff and her husband were country people, had never been used to city life, and had come to St. Louis to attend the World's Fair. While on defendant's car, he became sick, and leaving his wife in the seat which they had been occupying, he went to the rear platform and relieved himself by vomiting. Soon afterwards he leaned over the rail next to the other track and vomited again, and just then a car passing in the other direction on that track struck him and instantly killed him. The conductor was on the platform at the time and there was evidence that he shouted to him at about that exact instant to "look out." The rails of the two tracks were within fifty-six inches of each other, and the cars extended over the rails 25 inches respectively, leaving a space of six inches between the cars as they passed. The railing to the platform was about four feet high, but there was no screen above it. *Held*, that it was error for the court to declare that the deceased was guilty of such contributory negligence that plaintiff could not recover, and to sustain a demurrer to the evidence. The issue was one for the jury.

3. ———: ———: ———: **Six Inches Between Cars.** Whether or not the operation of street cars with a space of only six inches between them as they pass each other, with unguarded openings between them, is of itself an act of negligence, and whether or not a passenger who leaned over the platform had knowledge of their close proximity and was therefore guilty or not guilty of contributory negligence, are questions of fact for the jury.

4. ———: ———: ———: **Sick: No Warning.** A street car conductor, who is standing on the platform when a sick passenger comes out and sees him during the moments of his distress and vomiting, and sees that he is oblivious of his dangerous position, is guilty of negligence if he fails to timely warn him of his danger as he attempts, for the purpose of vomiting again,

to lean over the railing towards the other track on which cars. are passing with a space of only six inches between them and the one on which the passenger is riding. It was the conductor's duty to know both the close proximity of the cars, and the passenger's position on the platform.

5. ———: ———: ———: **Swaying of Cars.** It is not error to refuse to permit plaintiff to prove that street cars, which pass. each other in double parallel tracks, will rock and sway from side to side on account of inequalities in the tracks. Such facts are matters of common knowledge. But it would be competent to show that the surface of the rails and tracks was at. the point of the injury even or uneven at the time of the accident.

6. ———: ———: ———: **Presumption of Safety.** A sick passenger has the right to presume, when he goes to the rear platform to vomit, that the tracks and cars are properly constructed, and that there are no hidden dangers connected with their operation.

7. ———: ———: ———: **Pleading: Guardrails.** It is a question of fact for the jury to determine, whether or not it was negligence on the part of the street railway company to so operate its cars as to leave a space of only six inches between them as. they pass on different tracks, without guards to protect passengers from injury caused by leaning out of one car towards another; and, therefore, it was error for the trial court to strike out of plaintiff's petition a charge that defendant was. negligent in failing to construct and maintain guard railings on the back platform of sufficient height to protect passengers. from passing cars.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*R. P. & C. B. Williams* for appellant.

(1) It is not negligence, as a matter of law, for a passenger on a street car to protrude a part of his. body out of the car, but the question is one of fact to be determined by the jury; the test being whether an ordinarily prudent man would do the same act under the same or similar circumstances. Smith v. Railroad,

120 Mo. App. 328; Allen v. Railroad, 183 Mo. 411; Kreimelmann v. Jourdan, Receiver, 107 Mo. App. 64; Perrette v. Kansas City, 162 Mo. 238; Phelps v. Salisbury, 161 Mo. 1; Nixon v. Railroad, 141 Mo. 425; Barton v. St. Louis, etc., Co., 52 Mo. 253; Huelsenkamp v. Railroad, 37 Mo. 537; Miller v. Railroad, 5 Mo. App. 471; Tucker v. Railroad, 53 App. Div. 571, 65 N. Y. Supp. 989, affirmed in 169 N. Y. 589; Francis v. New York Steam Co., 114 N. Y. 380; Cummings v. Worcester, etc., Co., 166 Mass. 220; Powers v. Boston, 154 Mass. 60; Kird v. New Orleans, etc., Co., 109 La. Ann. 525; Summers v. Railroad, 34 La. Ann. 139; Fort Wayne Traction Co. v. Hardendorf (Ind.), 72 N. E. 593; Young v. Waters-Pierce Oil Co., 185 Mo. 634; Railroad v. Hoffbauer, 23 Ind. App. 614; Railroad v. Lee, 50 N. J. L. 435; N. Chicago, etc., Co. v. Williams, 140 Ill. 275; Johnson v. Railroad, 43 Minn. 53; Dahlberg v. Minn., etc., Co., 32 Minn. 404; Railroad v. Phillips (Tex.), 74 S. W. 793; Railroad v. Brophy, 105 Pa. St. 38; Railroad v. Higgs, 38 Kan. 375; Elliott v. Railroad, 18 R. I. 707; Geitz v. Railroad, 72 Wis. 307; Nellis on Street Railway Accident Law, 192; Georgetown v. Smith, 5 L. R. A. (N. S.), 274; 3 Thompson on Negligence, secs. 2972, 2973, 2975. (2) A passenger traveling upon a street car may presume that the carrier will discharge its full duty toward him, and will exercise that high degree of care, in constructing and operating its cars, and in constructing its tracks, imposed by law. Sweeney v. Railroad, 150 Mo. 246; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Hutchinson v. Railroad, 161 Mo. 246; Lynch v. Railroad, 112 Mo. 420; O'Conner v. Railroad, 94 Mo. 150; Deitring v. Railroad, 85 S. W. 140; Bradley v. Spicardsville, 90 Mo. App. 416; Conrad Grocer Co. v. Railroad, 89 Mo. App. 391; Jones v. Railroad, 99 Md. 64; Railroad v. Lee, 50 N. J. L. 435; Elliott v. Railroad, 18 R. I. 707; Johnson v. Railroad, 43 Minn. 53; Nellis

on Street Railway Accident Law, 55-62. (3) The operation of street cars with a space of but six inches between them while standing still, and of less space when in motion, is negligence inconsistent with the care required for the protection of passengers. Allen v. Railroad, 183 Mo. 411; Kriemelmann v. Jourdan, Receiver, 107 Mo. App. 64; Barton v. St. Louis, etc., Co., 52 Mo. 253; Winter v. Railroad, 39 Mo. 468; Huelsenkamp v. Railroad, 37 Mo. 537; Miller v. Railroad, 5 Mo. App. 471; Tucker v. Railroad, 53 App. Div. 571, 65 N. Y. Supp. 989, affirmed in 169 N. Y. 589; Francis v. New York Steam Co., 114 N. Y. 380; Cummins v. Railroad, 166 Mass. 220; Kird v. Railroad, 109 La. Ann. 552; Farlow v. Kelley, 108 U. S. 288; Schneider v. New Orleans, etc., Co., 54 Fed. 466; Fort Wayne Traction Co. v. Hardendorf (Ind.), 72 N. E. 593; Railroad v. Williams, 140 Ill. 275; McCord v. Railroad, 134 N. C. 53; Georgetown v. Smith, 25 App. D. C. 259. (4) That cars will rock and sway when in motion is a matter of common knowledge, of which the courts will take judicial notice. Geitz v. Railroad, 77 Wis. 307; Georgetown v. Smith, 25 App. D. C. 259, 5 L. R. A. (N. S.) 274, and note. (5) The conductor on the street car on which the deceased was killed was guilty of negligence in not warning deceased of his dangerous position. The facts were at least sufficient to warrant the submission of this question to the jury. South Covington v. McCleave, 18 Ky. Law Rep. 1036; Huelsenkamp v. Railroad, 37 Mo. 537. (6) That deceased was a stranger in the city and unfamiliar with the running of electric cars, and the track conditions, and his consequent ignorance of the danger, are a part of the circumstances which surrounded him, and are material in determining the question of contributory negligence. Allen v. Railroad, 183 Mo. 411; 7 Am. and Eng. Ency. Law, 391 and 392; Langan v. Railroad, 72 Mo. 392; Kriemelmann v. Jourdan, 107 Mo. App. 64.

*Glendy B. Arnold* for respondent; *Boyle & Priest*
of counsel.

WOODSON, J.—The plaintiff instituted this suit
in the circuit court of the city of St. Louis, on the 18th
day of November, 1904, against the defendant to re-
cover the sum of $5,000 damages for the alleged neg-
ligent killing of her husband, Henry C. Gage.

The petition in substance alleges: ·

That plaintiff was a resident of the city of Louis-
villè, State of Mississippi, and that she was the widow
of H. C. Gage, the deceased, who during his lifetime
was also a resident of Mississippi. That on the 8th
day of October, 1904, the deceased was in the city of
St. Louis, visiting the World's Fair; that when on a
Market street car, going west, *en route* to the World's
Fair Grounds, the deceased became sick at his stomach
and left his seat in the car and went to the back plat-
form thereof, for the purpose of vomiting; that in the
act of vomiting he placed his head over the railing
of the back platform of the car next to south track,
and that while he was in such position, and in the
act of vomiting, another car of the defendant on the
said south track, going east, passed said car on which
deceased was riding, and negligently struck him in the
head, causing him injuries from which he died.

The acts of negligence charged are that the con-
ductor on said car was guilty of carelessness in not
warning the deceased of the danger in placing his head
out of said car on the back platform thereof, from pass-
ing cars; that the said conductor saw the deceased at
the time of the accident, and failed to notify and warn
him of his danger.

Another act of negligence charged is, that the de-
fendants were guilty of carelessness in failing to con-
struct and maintain the guard railing on the back plat-
form of said car, on the side next to the south track,

of sufficient height to protect passengers from passing cars. And it is alleged that said guard railing on the back platform of said car was not constructed of sufficient height to defend passengers from passing cars.

Another act of negligence charged is that the defendants were guilty of carelessness in constructing and maintaining the double tracks, on which its cars were operated, at the place where the injury occurred, so close to each other, and their cars of such width, that said cars going in opposite directions on said tracks could not pass each other without danger to passengers.

It is finally alleged that from the effects of the injuries plaintiff's husband died on the 12th day of October, 1904, at the City Hospital, in the city of St. Louis, and plaintiff claims damages in the sum of five thousand dollars.

A motion was made by the defendant to strike out that part of plaintiff's petition which charged the defendants with negligence in failing to construct and maintain guard railings on the back platform of said car, of sufficient height to protect passengers from passing cars. The trial court sustained this motion, and struck out that part of plaintiff's petition. To which action of the court in so ruling plaintiff duly excepted. Thereafter, on April 3, 1905, plaintiff filed her second amended petition, which sets out substantially the same acts of negligence as the first amended petition, excepting the portions stricken out on motion.

The defendant, the United Railways Company, filed an answer of general denial to the second amended petition; the St. Louis Transit Company, in its answer, stated that the injury sustained by the deceased was caused by his own negligence, in extending his head over the side of the car, next to the other track on which cars were being operated in opposite direc-

tion from the one on which the deceased was riding.

On the issues thus made the cause was tried on the 27th day of May, 1905, before the Hon. Warwick Hough, and a special jury, and resulted in plaintiff taking an involuntary nonsuit, with leave to file a motion to set the same aside. The said motion was filed at the proper time, and was overruled by the court, and thereafter the plaintiff by proper steps has perfected her appeal to this court.

In order to sustain the issues presented by the pleadings, plaintiff introduced the following testimony:

John Geekie, a witness for plaintiff, testified that he was a passenger on the Market street car, on which Gage was killed, and saw the accident. That he was standing on the back platform; that he saw Gage, who was a passenger on the car, sitting about the center of the car. That he got up and walked out on the back platform, appeared to be sick, and leaned over the side railing and began to vomit. That he straightened up and leaned against the back of the car; remained in this position a few minutes when he leaned over and began to vomit again, and just at that instant the other car struck him. That the conductor was standing on the back platform just behind him. That the car stopped when it got up to the crossing and he and the conductor picked the deceased up. That the eastbound car did not stop. The sort of car on which they were riding was one of the large new cars that the Transit Company had just acquired. That the back platform had two iron bars across it. That the cars used on the line at the time of the accident were the same as the cars used now. When Gage came out of the car witness was leaning up right against the iron bar. The conductor was on the north side of the car just behind witness looking west. That the rail-

ing on the back platform was three and one half or four feet high; that it was the regular ordinary railing; there was no screen there. Witness was asked this question: "Have they any screens on these cars now?" This question was objected to as immaterial. The objection was sustained, to which ruling the plaintiff excepted. Witness was asked how long a time intervened between the time that the deceased first put his head over the car and straightened up and the second time, to which he replied that it might have been a minute or two. That he stood there with his back against the car for this length of time and put his head over again. Witness said that the deceased, when he came out of the car, seemed to be in distress and was very pale. On cross-examination the witness testified that he tried to hollow at the deceased before he was struck, and that about the instant he was struck the conductor hollowed, "Look out." That the cars didn't touch each other in passing. On re-direct examination the witness stated that he testified at the coroner's inquest, and when asked if he made any statement at the inquest about the conductor hollowing at Mr. Gage, he stated that he said the conductor hollowed, "Look out!"

This question was asked the witness:

"Q. Isn't it the fact that you stated this at that inquest: 'Where were you? A. On the back platform. This man was in the car, and he came out and seemed to be sick, and he placed his hands on the handrail and he vomited, and he straightened up, and a second or so before the east-bound car came along he put his head out and the car struck him. It was done in an instant. Q. Were there many on the platform? A. Myself, a little boy and the conductor. Q. Any conversation pass between him and anyone? A. No, sir. Q. Did he make any statement? A. No, sir. Q. Didn't say why he was sick or anything about it? A.

No, sir. Q. How fast was the west-bound car going? A. It was going pretty fair speed, and this occurred at the part of the road about half way between the Highlands and the next crossing; where you go to Forest Park University? Q. Well, after he was struck did you hear him? A. No, sir. Q. Did he talk at all? A. No, sir; he never spoke a word. Q. Was he conscious? A. I don't think he was; I think the man was dead, and the conductor ran over to lift him up. Q. Did you see him after the car stopped? A. No, sir; he was all bloody. Q. He was taken off the car was he? A. Yes, sir; a police officer was there. Q. And you went right on did you? A. Yes, sir.' Q. Was that all your testimony?

"MR. JAMISON: I object to that. He reads what purports to be the testimony, and he does not contradict anything that he said, and he tells the same story here, so far as I am able to discover, and they do not impeach their own witness.

"THE COURT: He is asked whether he said, in addition to that, that the conductor hollowed, 'Look out,' and he has answered that question that he thought he did state it.

"MR. WILLIAMS: Yes, sir; that he thought he did; now I ask him is not that all the testimony he gave.

"THE COURT: You asked if that is all he stated there, or whether he stated the other?

"WITNESS: That is all that I must have stated. I don't recollect. I answered every question.

"Q. Did you say anything about the exact seat where the man was sitting in the car when he got up to go out? A. No, I couldn't say whether I did or not. If they asked me, I told them; I simply answered any questions."

Henry Oswold, a witness for the plaintiff, testified: That on the 8th day of October, 1904, he was a policeman in the World's Fair district. That he was out

where the accident occurred; that it occurred east of the Clayton Road, which crossed the double tracks of the defendants, about fifty or sixty feet east of the said Clayton Road.

W. A. Garragas, witness for the plaintiff, testified: That he lives in Louisville, Mississippi, has lived there all his life; that the deceased was his brother-in-law; he was about forty-two years old when he died. That the deceased lived in the country all his life, and had never been to a city larger than Meridian, Mississippi. He knows that the deceased had not within the past ten or fifteen years visited any city. That he was with him and saw him every day or two; that if he had left the country he would have known it. That the deceased had never been to the city of St. Louis before. That he reached St. Louis, he thinks, on the 7th of October. Witness says that he visited and inspected the place where the accident occurred; that at that place, fifty or sixty feet east of the Clayton Road, he measured the distance between the double tracks of the Market street line. That he also measured the distance that the Market street cars projected over the track, and that it was twenty-five inches. That the distance between the double tracks was fifty-six inches, thus making a space of six inches between the Market street cars in passing each other on the double tracks at the place of the accident. He says that Louisville is twenty-two miles from the railroad, and was formerly sixty miles from the railroad. That the deceased, he knows, had been sick with chills and fever a couple of weeks before he came to the World's Fair.

James B. Gully, a witness for the plaintiff, testified: That he visited and inspected the tracks of the defendant at the place where the accident occurred. That the place was pointed out to him by a police officer who witnessed the accident, and it was about fifty

or sixty feet east of the Clayton Road. That he measured the distance between the double tracks on the Market street car line, at this place, and that he found the distance to be fifty-six inches. That he also measured the distance the Market street cars projected over the tracks at this place, and found it twenty-five inches. That two of these cars standing on the double tracks at the same place covered a space of fifty inches between the double tracks, thus making a space of six inches between the cars in passing each other. Witness was asked to state whether or not he had observed the Market street cars passing each other on the double tracks going at an ordinary rate of speed, and if they didn't rock and sway in their motion. This question was objected to as immaterial, and the objection was by the court sustained.

THE COURT: "The testimony in this case is to the effect that these cars did not touch each other in passing."

MR. WILLIAMS: "But suppose that they swayed so much that they came within an inch or two inches of each other?"

THE COURT: "That raises the question of whether a man has a right to project his body beyond the side of the car even two or three inches."

MR. WILLIAMS: "And I say that if an ordinarily prudent man would do that, that they were guilty of negligence in running their cars that way."

The court sustained the objection, to which ruling the plaintiff then and there excepted at the time.

The court refused to allow any testimony that the cars would rock and sway in their motion in running at their usual rate of speed, to which action of the court plaintiff timely excepted.

John B. Slough, witness for the plaintiff, testified: That he is the assistant claim agent of the United Railways Company; that his duties in the preparation

of cases carry him on the streets a great deal; that he has observed the condition of the tracks on the Market street car line near the Clayton Road; that there has been no change in the structure of the tracks at that point since the 8th day of October, 1904, except general repair work; but no alteration in the gauge; that the tracks are the same distance apart as they were at that time; that the cars operated over that line during the World's Fair were new cars, with some exceptions; that the Market street cars were operated over that line, and they were new cars; and that all of the new cars on all the lines were of the same widths or dimensions. That the Market street cars that are now used on the line are the same structure of cars that were used there on the 8th day of October, 1904. Witness says that there was a difference between the width of the new cars and the old cars of five and one-half inches, or about two and one-fourth or two and one-half inches on each side. In other words, the entire body of the new cars was from five to five and one-half inches wider than the old cars. He says that the cars going at a speed of fifteen miles an hour, if the track is in perfect condition, and when not going around a curve, if there is no sag in the tracks, will not rock in their motion. That the gauge and location of the tracks are about the same now as when the accident occurred.

Mrs. Henry C. Gage, the plaintiff, testified: That she was married to the deceased on the 14th day of November, 1888. That on the 8th day of October, 1904, she was his lawful wife. That he came to his death in a street car accident while visiting the World's Fair. That he was a stranger in St. Louis at the time he was killed, and that he was not in the habit of visiting cities where electric cars were operated. That he was a man of sober habits, never drank to excess, and never used drugs of any kind.

W. H. Thomas, witness for the plaintiff, testified: That he had known the deceased all his life, and that if he had ever drunk intoxicants he never knew it. That he attended the World's Fair with the deceased; that they came together; that they reached the city of St. Louis on the morning of the 7th of October, 1904, and were constantly together until about noon of October 8, 1904. At this time they took dinner together at the Fair Grounds; that they separated then, and he saw Gage no more. That he was duly sober at the time they separated.

As stated, at the close of plaintiff's case, the court directed a verdict for the defendants, and plaintiff took a nonsuit with leave. Then after the proper steps were taken, the case was appealed to this court; the grounds of the appeal are set forth in the assignment of errors.

I. The first insistence of the appellant is, that the court committed reversible error in giving respondent's instruction in the nature of a demurrer to the evidence. This instruction told the jury that there was not sufficient evidence to make out a prima-facie case for the plaintiff. In order to properly determine that proposition, it will be necessary to briefly state the evidence as preserved in the record, which is as follows:

Plaintiff and deceased were husband and wife; they were country people, living in the State of Mississippi, and had never been used to city life. At the time of the accident complained of, the deceased was in St. Louis in attendance upon the World's Fair, then in progress. He reached there on October 7th and was killed on the 8th.

The defendant was a street railway company engaged in the carriage of passengers for hire; and at the time of the injury the deceased was a passenger on one of its west-bound cars. At the point of the

accident, the company was operating a double-track street railway, running east and west. The distance between those tracks was fifty-six inches. The west-bound cars ran over the north track, and the east-bound cars passed over the south track. The frame work or sides of those cars projected over the tracks on either side twenty-five inches, and in passing each other there was only a space of six inches between them. The rear platform of the car on which the deceased was injured had a railing around it about four feet above the floor, but no screen extending from the railing up to the top of the car.

Immediately before the injury occurred, the conductor in charge of the car, John Geekie, a witness in the case, and a little boy were standing on the rear platform of the car. Just at that time the husband of plaintiff was seated near the center of the car and was taken sick at the stomach, and in order to relieve himself he arose from his seat and passed through the car to the rear platform, and protruded his head over the south railing, and vomited. After thus relieving himself, he straightened up for a moment, and then again protruded his head over the railing and began vomiting again, and while in that act an east-bound car on the south track in passing the car he was on struck him on the side of the head and killed him almost instantly.

Under that state of facts, the trial court held, as a matter of law, that the deceased was guilty of such contributory negligence that his widow could not recover.

It is the well-settled law of this State, and elsewhere, that it is not negligence, as a matter of law, for a passenger on a street car to protrude a portion of his body out of the car in which he is being carried, but such question is one of fact to be determined by the jury, under proper instructions from the court;

the test being whether or not an ordinarily prudent person would do the same act under the same or like circumstances. [Allen v. Railroad, 183 Mo. 411; Smith v. Railroad, 120 Mo. App. 328; Kreimelmann v. Jourdan, 107 Mo. App. 64.]

In the Allen case, supra, the plaintiff was a city-reared man and was familiar with the cars, tracks, etc., and was struck by a passing car on another track while he was stepping down from the platform of the grip-car on to the running board, for the purpose of taking a seat behind the gripman's station. In that case the distance between the cars was thirteen inches; and, under those facts, this court held that the evidence was sufficient to carry the case to the jury.

The appellant has cited some thirty-odd cases from the various states enunciating the rule announced above, but the law upon that question is so well settled, that we believe it would be a useless waste of time to attempt to review them.

We have been unable to see anything in the facts of this case which would take it out of the operation of the rule announced in the Allen case. Self-respect and decency prompted Gage, and would prompt any ordinarily decent man, to leave the car and seek the platform in case of such sickness.

II. The plaintiff also insists that the operation of street cars with a space of only six inches between them in passing each other, with unguarded openings between them, was of itself an act of negligence, and for that reason the demurrer to the evidence should not have been sustained, but that the case should have been submitted to the jury upon the questions of defendant's negligence and the contributory negligence of the deceased.

In the discussion of this same question in the case of Allen v. Railroad, supra, VALLIANT, J., said: "Defendants also think that the case should have been

taken from the jury on the ground that there was no evidence tending to prove negligence on the part of the defendants. If the space between the cars was as narrow as the plaintiff's testimony tended to show that it was, it became a question for the jury whether or not the operating of cars of that kind within that distance of each other was compatible with the duty defendants owed its passengers. But if the distance between them was so little that a passenger, even though he exercised ordinary care, was liable to be knocked off by a passing car, then the question of fact would arise, what opportunity did the plaintiff have of knowing the danger? And in answering that question, the jury would consider the extent of the plaintiff's familiarity with the subject and to what extent the danger was discernible to one in the plaintiff's situation. In passing on those questions, the jury might conclude that the more dangerous was the plan of the cars, if it was known, or was obvious, the greater should have been the care of the plaintiff to look in the direction from which a car was to be expected before stepping on the running board. And on the other hand, if there was a distance of from twenty-eight to thirty inches between the cars, as defendants' evidence tended to prove, a less degree of caution might become necessary to keep the passenger within the limits of reasonable care. These points are suggested only for the purpose of illustrating the proposition that the evidence in this case was such as to fairly raise the question whether or not the plaintiff was guilty of negligence that contributed to his injury, but it was not such as to justify the court in taking the case from the jury.'' [Kreimelmann v. Jourdan, 107 Mo. App. 64; Barton v. Railroad, 52 Mo. 253, 256; Winters v. Railroad, 39 Mo. 468.]

The case at bar presents a stronger case for the consideration of the jury than any of the cases above

cited, for the reasons that the cars passed closer together; Gage was a stranger in the city and was unfamiliar with the road, cars and their operation; and was called to the platform where he was injured by reason of sickness.

These are matters which should be considered by the jury. [7 Am. and Eng. Ency. Law, 391, 392; Allen v. Railroad, supra; Langan v. Railroad, 72 Mo. 392.]

III. The evidence shows that the conductor in charge of the car on which Gage was injured was on the rear platform thereof when he came out of the car, and he must have seen Gage during the moments of his distress, and must have been oblivious to danger; and knowing, as he did, the dangerous juxtaposition of the cars in passing, he was guilty of negligence in not warning him of the approaching and impending danger in time to have averted the injury.

In the consideration of a similar question, this court, speaking through WAGNER, J., said: "He [the passenger] stood within a few feet of the driver, and the driver knew, or, at least, it was his duty to know, the close proximity of the cars when they were about to collide, and also the position of the passengers on the platform. His driving steadily ahead, under such circumstances, stamps the act with recklessness and gross negligence. The question of negligence was for the jury, and was properly submitted to them." [Huelsenkamp v. Railroad, 37 Mo. 537, l. c. 553.]

And, as was said by the Court of Appeals of Kentucky, in the case of Railroad v. McCleave, 18 Ky. Law Rep. l. c. 1037: "But the court refused to so instruct, and we think did not err in that particular, for no degree of contributory negligence on the part of even a trespasser will release a person in charge of a train or single car, whether operated by steam or electricity, from the legal obligation to use reasonable effort to avoid injuring him if his peril is discovered

in time to do so, and we do not see why the conductor of an electric or steam car should not be held to the duty of giving warning to one of his passengers when he actually sees him in a position or place on the car of peril to life or limb, and contributory negligence of such passenger is not a legal excuse for the non-performance of that duty; and that a passenger on one of appellant's cars passing over that bridge is in peril when his arm or head protrudes two or three inches is plainly shown by the evidence.''

The Court of Appeals of the District of Columbia held that it was gross negligence for a street railway company to use cars for the transportation of passengers which in passing each other are not more than three inches apart, and that it was doubly negligent for running them with the panels taken off and with the runningrail placed where the passengers would naturally rest their arms. [Railroad v. Smith, 25 App. Cas. (D. C.) 259.]

IV. Plaintiff complains of the action of the court in refusing to permit her to prove that street cars while in motion will rock and sway from side to side, on account of the inequalities of the track.

We are of the opinion that said ruling was not error, for the reason that it is common knowledge that a car being propelled by steam or electricity over a railroad track will be swayed by inequalities of the track. [Geitz v. Railroad, 72 Wis. 307; Railroad v. Smith, supra, l. c. 271.]

The juror's knowledge of those facts is equal to that of any witness who might testify upon the subject. The swaying of the car is caused by the operation of the law of gravity and the mechanical forces used in propelling the car. When a wheel of the car comes to a low place on the rail, the law of gravity carries it to the lowest point, and the mechanical forces operating upon the car, in turn, raises it to the highest point

of the rail. This motion of the car will cause the car to rock from side to side where there are inequalities in the surface of the two rails; and if there are no inequalities, but both rails are depressed alike, then the motion of the car will be from end to end and not from side to side. All men of ordinary intelligence and observation know those facts; and the testimony of witnesses explaining those motions and their causes would shed no additional light upon the question.

It is proper, however, to show whether or not the surface of the rails and tracks at the point of the injury were even or uneven at the time of the accident.

V. Gage had the right to presume that when he went to the rear end of the car to relieve himself, the tracks and cars were properly constructed, and that there were no hidden dangers connected with their operation. [Sweeney v. Railroad, 150 Mo. 385; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Hutchinson v. Railroad, 161 Mo. 246; Lynch v. Railroad, 112 Mo. 420.]

VI. We are of the opinion that the action of the court in striking out parts of plaintiff's petition was erroneous, for the reason that it is a question of fact for the jury to determine, whether or not it was negligence on the part of the defendant to so operate its cars as to leave only a space of six inches between them while passing, without guards to protect the passengers from injury caused by coming in contact with passing cars.

VII. The defendant insists that the abstract of record does not properly show that the bill of exceptions was timely filed in the court below.

After a careful reading of the abstract, in the light of the adjudications of this court upon that subject, we are inclined to hold that the abstract is not open

Burridge v. Insurance Co.

to the objection presented. At most, the objection only has a technical ground upon which to rest, and is devoid of all substantial merit and justice. We are, therefore, of the opinion that this objection is not well taken.

For the reasons hereinbefore stated, we are. of the opinion that the judgment should be reversed, and the cause remanded for a new trial. It is so ordered. All concur.